**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Patricia Blau, | ) | No. CV-08-773-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| America's Servicing Company, U.S. Bank, N.A., and Mortgage Electronic Registration Systems, | ) | |
| Defendant. | ) | |

Currently pending before the Court are Defendants Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo"), U.S. Bank, N.A., and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss. (Dkt.#82.) After reviewing the pleadings and determining oral argument unnecessary, the Court issues the following Order.

**I.    BACKGROUND**

This confounding lawsuit arises from a seemingly straightforward financial transaction, whereby Plaintiff Patricia Blau took out second mortgage on her home in Mesa, Arizona with BNC Mortgage, Inc. ("BNC") in August 2005. In exchange for $280,000, Blau entered into a promissary note with BNC that was secured by a deed of trust on the property. The Deed of Trust listed the lender as BNC, the borrower as Blau, the trustee as T.D. Service

Company, and MERS as the lender's "nominee" and the beneficiary of the security instrument. At some point, after Plaintiff failed to make monthly payments, non-judicial foreclosure proceedings through a trustee's sale were commenced. The trustee's sale was supposed to have taken place on May 15, 2008. However, on April 23, 2008 Plaintiff filed the instant lawsuit and the numerous Defendants that were initially named in this suit agreed to delay foreclose until the case was resolved.

The only remaining Defendants in this action are Wells Fargo, US Bank and MERS. Plaintiff has claims against these Defendants for violations of the Home Ownership and Equity Protection Act ("HOEPA"), the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), Fraudulent Misrepresentation, Unjust Enrichment, Civil Conspiracy, Racketeer Influenced and Corrupt Organizations Act ("RICO"), Quiet Title, and Usury. In addition, in Plaintiff's response to Defendants motion to dismiss, Plaintiff attempts to argue what appears to be a claim under the Uniform Commercial Code ("UCC")—A.R.S. § 47-3101, et seq..

The relationship of the remaining Defendants to Plaintiff's property are as follows. On December 1, 2005, Wells Fargo, doing business as America's Servicing Company, assumed the monthly mortgage servicing of Plaintiff's loan. As the servicer, Wells Fargo thereafter sent monthly billing statements to the Plaintiff and accepted the Plaintiff's mortgage payments.

With respect to MERS, it has been described by one court as "a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." Mortgage Elec. Reg.

Sys., Inc. v. Nebraska Depart. of Banking, 704 N.W.2d 784, 785 (Neb. 2005). Or, as Defendants succinctly state, MERS was developed in order to reduce questions and/or disputes regarding interest in mortgages as they are bundled into mortgage-backed securities. In the context of the instant case, MERS is listed on the Deed of Trust as the "nominee" for the lender and its successors. MERS is also referred to as the "beneficiary under [the] security agreement." The Deed of Trust further states that the "Borrower [Blau] understands and agrees that MERS holds only legal title to the interests granted by Borrower . . . MERS has the right to . . . foreclose and sell the property."

With respect to US Bank, the Parties' filings show that on February 12, 2008, MERS purported to assign the Deed of Trust on Plaintiff's home to US Bank, who was then acting as Trustee for the Structured Asset Investment Loan Trust, 2005-09, at a South Carolina address. After the sale from MERS to US Bank as Trustee for the Structured Asset Investment Loan, Plaintiff's mortgage/deed of trust went through a unknown number of securitizations.

Turning to the events leading to the trustee's sale of Plaintiff's property to enforce the security interest in the Promissary Note, Plaintiff alleges the following facts in her Third Amended Complaint. In October 2006, Plaintiff was allegedly having financial difficulties and was a number of days late on her mortgage payment. Plaintiff then allegedly called the servicer, Wells Fargo, in an attempt to make arrangements for a catch up plan. Plaintiff thereby allegedly offered to make a full payment by phone to prevent any late reporting. However, Plaintiff claims that the Wells Fargo representative informed her that a delayed payment plan of her late mortgage would be a more beneficial alternative and would have no impact on her credit rating. Plaintiff claims that she then entered into a payment plan agreement with Wells Fargo, and that she honored this new plan by making payments under its obligations for the next six-months. Plaintiff alleges that when she attempted to refinance her loan due to the fact that the interest rate was set to adjust up in October 2007, Plaintiff realized that Wells Fargo had breached their payment plan agreement and had reported seven

late payments. Plaintiff claims that the reporting of these late payments prevented her from being able to secure a suitable loan.

On February 12, 2008, the same day that MERS assigned the Deed of Trust to US Bank who was acting as Trustee for the Structured Asset Investment Loan Trust 2005-09, US Bank took the newly acquired interest in Plaintiff's property and executed a Substitution of Trustee document. When signing the Substitution of Trustee document, Bosco referred to himself as the "representative via limited power of attorney for U.S. Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2005-9 by Wells Fargo Bank, NA atty-in-fact." On that same day, Bosco executed a Notice of Trustee's Sale on Blau's property.

## II. LEGAL STANDARD

The Court must liberally construe pleadings submitted by a pro se claimant, affording the claimant the benefit of any doubt.[1] Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, the Court "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

To survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Compare Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party.") with Sprewell v. Golden State Warriors, 266

---

[1] Although Plaintiff Patricia Blau is currently represented by counsel, her Third Amended Complaint was filed pro se, and the Court will apply the same legal standard used to review pro se filings. Plaintiff's counsel of record filed a Notice of Entry of Appearance with the Court on March 30, 2009, (Dkt.#88.), and Plaintiff's Third Amended Complaint was filed on January 21, 2009. (Dkt.#60.)

- 4 -

F.3d 979, 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

However, "dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In evaluating a motion to dismiss, a district court need not limit itself to the allegations in the complaint; but may take into account any "facts that are [] alleged on the face of the complaint [and] contained in documents attached to the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

**III. DISCUSSION**

    **A.    Fraudulent Misrepresentation**

As a preliminary matter, it does not appear that the State of Arizona recognizes "fraudulent misrepresentation" as a distinct tort. Instead, Plaintiff's claim of fraudulent misrepresentation appears to be subsumed within the tort of fraud. There are two types of actionable civil fraud claims under Arizona law: common law and constructive fraud. The Court will construe Plaintiff's pro se Complaint to have made claims for both types of fraud.

Common law fraud occurs when a defendant evinces an actual intent to deceive, Haisch v. Allstate Ins. Co., 5 P.3d 940, 944 (Ariz. Ct. App. 2000), while constructive fraud does not require an intent to deceive, but instead arises when a defendant breaches a legal or equitable duty. Dawson v. Withycombe, 163 P.3d 1034, 1057-58 (Ariz. Ct. App. 2007) (discussing constructive fraud).

To prevail on a common law fraud claim, Blau must prove the following elements: (1) a representation; (2) that was false; (3) material; (4) the speaker had knowledge of its falsity or ignorance of its truth; (5) the speaker intended that it should be acted upon by the person and in the manner reasonably contemplated; (6) the listner was ignorant of its falsity;

1  (7) relied on its truth; (8) such reliance was justified; and (9) the listener suffered consequent
2  and proximate injury. See Enyart v. Transamerica Insurance Co., 985 P.2d 556, 562 (Ariz.
3  Ct. App. 1998).

4  To prevail on a claim on constructive fraud, Blau must prove that (1) Defendants had
5  a fiduciary or confidential relationship with Plaintiff that gave rise to a legal or equitable
6  duty; (2) Defendants breached that duty; (3) the breach tends to deceive others, violates
7  public or private confidences, or injures public interests; and (4) the breach induced
8  detrimental and justifiable reliance. Dawson, 163 P.3d at 1057-58 (citing Lasley v. Helms,
9  880 P.2d 1135, 1137 (Ariz. Ct. App. 1994), Assilzadeh v. Cal. Fed. Bank, 98 Cal. Rptr. 2d
10 176, 184 (Cal. 2000), In re McDonnell's Estate, 179 P.2d 238, 241 (Ariz. 1947)).  Most
11 importantly, no showing of "intent to deceive or dishonesty of purpose" is required.  See
12 Lasley, 880 P.2d at 1138.

13 With respect to common law fraud, there is little doubt that Blau has stated a claim
14 against Wells Fargo for purposes of surviving Defendants' Motion to Dismiss. Plaintiff has
15 alleged that an employee of Wells Fargo falsely promised to modify her mortgage payment
16 schedule and then promised not to report any late payments made pursuant to this modified
17 plan to the appropriate credit reporting agencies. These allegations meet the elements of
18 common law fraud. It is important to remember that a dismissal motion made under Rule
19 12(b)(6) of the Federal Rules of Civil Procedure is proper only where there is either a "lack
20 of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable
21 legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  At this
22 early stage of the litigation, the Court assumes that all facts alleged in Plaintiff's Complaint
23 are true. Assuming the veracity Plaintiff's representations, the Court then asks whether the
24 allegations contained in the Complaint are "plausible" to the extent a sufficient legal claim
25 has been made out. Iqbal, 129 S.Ct. at 1949. In this case, Blau's averments regarding
26 common law fraud certainly are. As such, Blau should have the opportunity to proceed to

discovery on this claim, eventually testing the evidence that she is able to produce against a motion for summary judgement, should Wells Fargo chose to file one.[2]

The Court notes that it rejects Defendants argument that Wells Fargo cannot be held liable for common fraud because a borrower does not have the right to rely on a lender's representations. The case cited to support Defendants' contention is the seventy year-old case of <u>Stewart v. Phoenix Nat'l. Bank</u>, 49 Ariz. 34 (Ariz. 1937). <u>Stewart</u> held that in the absence of a confidential or fiduciary relationship a borrower cannot justifiably rely on representation made by a lender during mortgage negotiations. Defendants also state that under Arizona case law, the lender-borrower relationship is not fiduciary in nature. <u>See</u> <u>McAlister v. Citibank</u>, 829 P.2d 1253, 1259 (Ariz. 1992). The Court cannot accept Defendants' claim that a confidential or fiduciary relationship must exist between the Parties for a common law fraud action to lie. First, Defendants' proffered interpretation would force the Court to conflate common law fraud with constructive fraud. Unlike constructive fraud, common law fraud provides a remedy to those who are deceived by those who provide false or misleading representations that are intended to induce reasonable reliance. <u>See</u> <u>Dawson</u>, 163 P.3d at 1057-58. Second, <u>Stewart's</u> rationale has been dramatically undercut by changes in public policy in Arizona since 1937. A good example of this shift can be found in the context of fraud actions between contracting parties. In this context the Arizona Court of Appeals has held that they "are unwilling to endorse the idea that victimization of the ignorant has legal sanction," <u>Lubin v. Johnson</u>, 820 P.2d 328, 328-29 (Ariz. Ct. App. 1991), noting that "[t]here is nothing particularly attractive in the proposition that [a party] may by misrepresentation induce a person to forego rights and then defend on the ground that the fraud is excused because the person defrauded should have known better." <u>Id.</u> The same reasoning should apply here. The Court cannot sanction the notion that a financial institution like Wells Fargo can purposely mislead a borrower into altering their mortgage payments and

---

[2]It should be noted that Blau has failed to state a valid claim for common law fraud against either MERS or US Bank, since these entities were not involved in the alleged mortgage payment plan that Blau supposedly entered into with Wells Fargo in late 2007.

then defend a subsequent fraud claim on the ground that the lender should have known better than to believe the bank's representative or that the bank owed them no duty to be truthful.

Blau's claim of constructive fraud against Wells Fargo is somewhat more difficult to resolve at this stage of the litigation. In the context of constructive fraud, Defendants' recitation of the non-fiduciary nature of the lender-borrower relationship, McAlister, 829 P.2d at 1259, would seem to have more legal significance, since an essential element of constructive fraud is a legal or equitable duty between the parties. Dawson, 163 P.3d at 1057-58. Despite the lack of a fiduciary relationship between Wells Fargo and Blau, it is not altogether clear whether the borrower-lender relationship might still give rise to a legal or equitable duty sufficient to support a constructive fraud claim. Because Blau's common law and constructive fraud claims are factually identical, there would likely be minimal, if any, additional costs or delay incurred by the Parties in permitting discovery on both claims. At the conclusion of discovery, in the form of a motion for summary judgement, the Court should have the opportunity to be presented with additional briefing on whether Blau meets the elements of constructive fraud, including the element requirement the establishment of a legal or equitable duty between the Parties.

In sum, Plaintiff's claims for common law and constructive fraud against Wells Fargo will proceed beyond the motion to dismiss stage. However, Plaintiff's fraud claims against MERS and US Bank will be dismissed with prejudice.

**B.    Trustee's Sale/UCC Claim**

As Defendant points out, Plaintiff failed to include a count in her Third Amended Complaint relating to the foreclosure proceedings. Accordingly, Defendant urges that the Court reject Plaintiff's attempt to add new claims in her response brief. To the extent Plaintiff is arguing for amendment, Defendant argues the Court should reject her attempts to amend her Complaint for the fourth time as futile. See Manzarek v. St. Paul Fire & Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008) (setting forth the five factors used by the Court when granting a motion for leave to amend, including futility). Again, the Court acknowledges that Plaintiff was proceeding pro se at the time she lodged her Third Amended Complaint;

thereafter, Plaintiff acquired counsel, who was then able to address Defendants' motion to dismiss. As previously stated, the Ninth Circuit has instructed district courts to liberally construe pleadings submitted by a pro se claimant, affording the claimant the benefit of any doubt. Karim-Panahi, 839 F.2d at 623. Obviously, the foreclosure/trustee's sale proceedings are central to Plaintiff's lawsuit. Indeed, even a cursory review of the record shows that Blau has filed multiple motions aimed at enjoining the trustee's sale. (See Dkt.#17, Motion to Halt the Sale of Property Until Pending Lawsuit Has Been Decided; see also Dkt.#23, Motion for Temporary Restraining Order, Motion for Preliminary Injunction.) Given the Ninth Circuit's admonishing regarding pro se complaints, the critical significance of the sale to Plaintiff's lawsuit, and the fact that Plaintiff's Third Amended Complaint is replete with questions relating to the nature of the foreclosure proceedings, in accordance with the Ninth Circuit's admonition the Court will construe Plaintiff's Third Amendment to state a claim for relief from enforcement of the non-judicial sale of her property.

The Court notes that the record before it is not a model of clarity. Furthermore, both Parties have submitted numerous documents outside the scope of the pleadings. See Farr v. United States, 990 F.2d 451, 454 (9th Cir. 1993) (noting that if the district court needs to go beyond the Complaint to resolve a motion to dismiss, then the motion should be converted into a motion for summary judgment and the parties should have the opportunity to conduct discovery).[3] As far as the Court can reasonably discern, Plaintiff has two distinct arguments concerning foreclosure. First, Plaintiff argues that under the UCC, Defendants must either produce the original Promissary Note that was entered into between BNC and Blau or

---

[3]Conversely, "material which is properly submitted as part of the complaint may be considered' on a motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), cert. denied, 512 U.S. 1219, 114 S. Ct. 2704, 129 L. Ed. 2d 832, (1994); Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)). Similarly, a district court may consider documents referred to or "whose contents are alleged in a complaint and whose authenticity no party questions but which are not physically attached to the [plaintiff's] pleading" Id. at 454.

1 demonstrate that US Bank and its successor are holders in due course of the Note. Second, 2 Plaintiff contends that Defendants have not been able to show that US Bank and its 3 successors hold any interest in Plaintiff's property, because US Bank's assignor, MERS, did 4 not have a legally cognizable interest in the Deed of Trust. For reasons explained below, the 5 Court finds both of Plaintiff's arguments to be lacking merit.

**1. Physical Production of the Original Note**

Under Arizona law, "[u]nlike their judicial foreclosure cousins that involve the court, deed of trust sales are conducted on a contract theory under the power of sale authority of the trustee." In re Krohn, 52 P.3d 774, 777 (Ariz. 2002). "[A] power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold . . . after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security . . . ." A.R.S. § 33-807(A). The Arizona statutes governing the sale of foreclosed property through a trustee's sale do not specifically require that the foreclosing party produce a physical copy of the original Promissary Note.

Like most states, Arizona has adopted the UCC. The UCC, among other things, governs the enforcement of negotiable instrument, providing that "'[p]erson[s] entitled to enforce' an instrument include the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3309 [because the note is lost or destroyed]." A.R.S. § 47-3301. There is very little case law on the issue of whether the UCC has any applicability in the context of non-judicial trustee sales or foreclosures in Arizona. The only courts that have addressed this issue are federal courts within the District of Arizona; neither the Arizona Court of Appeals, nor the Arizona Supreme Court have weighed in on the issue. When addressing the applicability of the UCC to foreclosure sales, courts within the District of Arizona "have routinely held that [a plaintiff's] 'show me the note' argument lacks merit." Diessner v. Mortgage Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187-88 (D. Ariz. 2009) (quoting Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009).

Given the dearth of case law, the most prudent course of action is for this Court to follow the rulings of its sister courts within the District of Arizona and hold that production of the original Promissary Note is not required before commencing a foreclosure/trustee's sale. To the extent Blau wants to argue that these non-judicial proceedings are more appropriately governed by the UCC, that argument would be better suited for the Arizona Supreme Court, which is the body charged with interpreting the laws of the State of Arizona. Absent specific and compelling Arizona case law, this Court will not presume that the UCC has any applicability to foreclosure proceedings.

### 2. US Bank's Interest in the Property

The next issue concerns whether US Bank and its successors have any cognizable interest in Plaintiff's Property. At issue here is the role played by MERS in the Deed of Trust. As previously noted, the Deed of Trust lists MERS as the lender's (in this case BNC) "nominee," as well as being the "beneficiary under the security agreement." Plaintiff argues that this language is nonsensical and that real estate transactions involving a deed of trust do not generally recognize a party called a "nominee." Because the position of nominee has no legal significance, Plaintiff's contention is that MERS was not entitled to transfer the lender's interest to US Bank (who was acting as Trustee for the Structured Asset Investment Loan Trust 2005-09). According to Plaintiff, because US Bank and the Structured Asset Investment Loan Trust 2005-09 have no legal interest in Blau's property, the Substitution of Trustee (which substituted Michael Bosco for the T.D. Service Company) and the simultaneous Notice of Trustee's Sale that Bosco executed are void, and the land cannot be properly foreclosed upon.

Much like the previous issue, the Court is not aware of any Arizona state cases that have interpreted the definition of the word "nominee" in the context of financial documents, such as Deed of Trust. Recently, however, the Kansas Supreme Court has addressed this specific issue in great detail in the case of <u>Landmark Nat'l Bank v. Kesler</u>, 2009 Kan. LEXIS 834 (Kan. Aug. 28, 2009). In absence of any binding case law, the Court finds the reasoning of that case to be somewhat instructive. As the Kansas Court noted, Black's Law Dictionary

defines the word nominee to mean "[a] person designated to act in place of another, [usually] in a very limited way" and as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1076 (8th ed. 2004). The Kansas Supreme Court also pointed out that various other courts have addressed the relationship between MERS and the lender in similar financial instruments and these courts have determined that MERS enjoys an agency relationship with the lender. Landmark, 2009 Kan. LEXIS 834, *21-22 (citing In re Sheridan, 2009 Bankr. LEXIS 552, 2009 WL 631355, at *4 (Bankr. D. Idaho March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); Mortgage Elec. Registration System, Inc. v. Southwest, 2009 Ark. LEXIS 121, 2009 WL 723182 (March 19, 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); LaSalle Bank Nat. Ass'n v. Lamy, 12 Misc. 3d 1191[A], 824 N.Y.S.2d 769, 2006 NY Slip Op 51534[U], 2006 WL 2251721, at *2 (N.Y. Sup. 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")). Ultimately, the Kansas Supreme Court concluded that under Kansas law MERS more closely resembles a "straw man," rather than agent or a "a party possessing all the rights given a buyer." Landmark, 2009 Kan. LEXIS 834, *22.

In the context of Blau's Deed of Trust, the Court considers the status of MERS to be more closely analogous to an agent than the mere straw man referred to in Landmark. Unlike the facts in Landmark, where MERS was only referred to as a nominee throughout the instrument, Blau's Deed of Trust states that MERS is both the lender's nominee and the "beneficiary" of the agreement. For example, MERS is explicitly referred to as the beneficiary under the section of the document titled "Transfer of Rights in the Property." In addition, Blau's Deed of Trust states:

Borrower [Blau] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary, to comply with laws and customs, MERS (as nominee Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and

sell the Property; and to take any action required of Lender, including, but not limited to, releasing and cancelling this Security Instrument.

The Court finds that the use of this language in Blau's Deed of Trust, which was attested to by Blau herself, supports a finding that MERS was authorized by BNC to act on its behalf and exercise the rights that BNC held under the Deed of Trust. Under an agency theory, the Court finds that MERS, acting on behalf of the lender, was authorized to transfer the lender's interest to US Bank and the Structured Asset Investment Loan Trust 2005-09.

The Court further notes that relevant portions of Arizona's revised statutes authorizes the lender, as beneficiary of the deed of trust, to "at any time remove a trustee for any reason or cause and appoint a successor trustee, and such appointment shall constitute a substitution of trustee." See A.R.S. § 33-804(B). Because US Bank and the Structured Asset Investment Loan Trust 2005-09 acquired the interest of the lender by agreement with MERS, it thereby became the beneficiary of Blau's Deed of Trust. As beneficiary, the Structured Asset Investment Loan Trust 2005-09 (and US Bank as its trustee) was authorized under A.R.S. § 33-804(B) to any time substitute Michael Bosco as Trustee in the place of the T.D. Service Company.

Accordingly, Bosco's initiation of a Trustee's Sale of Blau's property was permissible under Arizona law ( it is undisputed that Blau had defaulted on the loan). Therefore, her claims for relief from the Trustee's Sale under a theory that US Bank and the Structured Asset Investment Loan Trust 2005-09 lacked a cognizable legal interest in the property must be rejected by the Court.

In sum, the Court finds Plaintiff's claims that the foreclosure proceedings were illegitimate because US Bank possessed no interest in the property or that the UCC requires the presentation of the original Promissary Note lack merit and must be dismissed.

**C.    Plaintiff's Remaining State and Federal Claims**

**1. Usury, Unjust Enrichment, Civil Conspiracy, Quiet Title**

Because Plaintiff, and her retained counsel, did not so much as attempt to respond to the legal arguments raised in Defendants' motion to dismiss as to these four claims,

Defendants argue that the Court is authorized by LRCiv 7.2(i) to consider Plaintiff's lack of response as, "consent to the…granting of the motion and the Court may dispose of the motion summarily." See Doe v. Dickenson, No. CV-07- 1998-PHX-GMS, 2008 WL 4933964 at *5 (D. Ariz. Nov. 14, 2008) ("Although Plaintiffs provide a lengthy factual rebuttal…they make no argument, and offer no authority….Plaintiffs are deemed to have consented to Defendants' arguments under the local rules."); Currie v. Maricopa County Cmty. Coll. Dist., No. CV-07-2093-PHX-FJM, 2008 WL 2512841, at *2 n.1 (D. Ariz. June 20, 2008) ("[Because] Plaintiff does not respond to [Defendant's] argument…her failure to do so serves as an independent basis upon which to grant [the] motion to dismiss….").

The Court agrees with Defendants. Plaintiff lack of a response to these contentions is indicative of the frivolous nature of her claims for Usury, Unjust Enrichment, Civil Conspiracy, Quiet Title. The Court further notes that it has read through Plaintiff's Third Amended Complaint and finds that these four claims fail to meet the pleading requirements of Iqbal and Twombly, which require "plausible" allegations against a defendant. Iqbal, 129 S.Ct. At 1949 (noting that a complaint must "state a claim to relief that is plausible on its face"). As such, Plaintiff's Usury, Unjust Enrichment, Civil Conspiracy, Quiet Title are dismissed.

**2. RICO**

The elements of a federal civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" Lacy v. County of Maricopa, 2008 U.S. Dist. LEXIS 10959, 2008 WL 312095, * 2 (D. Ariz. 2008) (citing Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). "Illegal activities that constitute predicate acts for federal RICO liability are identified in 18 U.S.C. § 1961(1)." Lacy, 2008 U.S. Dist. LEXIS 10959, 2008 WL 312095 at * 2. A pattern of racketeering requires at least two acts of racketeering activity. See 18 U.S.C. § 1961(5).

"The Ninth Circuit has held that allegations of predicate acts under RICO must comply with Rule 9(b)'s specificity requirements." <u>U.S. Concord, Inc. v. Harris Graphics Corp.</u>, 757 F.Supp. 1053, 1061 (N.D. Cal. 1991) (citing <u>Schreiber Distributing Co. v. ServWell Furniture Co.</u>, 806 F.2d 1393, 1400-01 (9th Cir.1986)). A RICO plaintiff must allege the time, place and manner of each act of fraud, and the role of each defendant in the fraud or other criminal acts identified in § 1961(1). <u>Lancaster Community Hospital v. Antelope Valley Hospital Dist.</u>, 940 F.2d 397, 405 (9th Cir. 1991).

Aside from the conclusory allegations that Defendants placed people in loans for which they were not qualified, falsely inflated the asset through puffed appraisals, and failed to inform the borrower of the assignments, Plaintiff has failed to point to any specific allegations concerning her case or these specific Defendants. As such, The Court rejects Blau's RICO claim as a matter of law.

### 3. TILA

The Truth in Lending Act, or TILA, "requires a 'creditor' to disclose credit terms—for example, the annual interest rate—to a borrowing consumer." <u>Eby v. Reb Realty, Inc.</u>, 495 F.2d 646, 647 (9th Cir. 1974) (citing 15 U.S.C. § 1638). "Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986) (citing 15 U.S.C. § 1601(a)).

TILA confers a statutory "right of action only on a borrower in a suit against a borrower's creditor." <u>Talley v. Deutsche Bank Trust Co.</u>, 2008 U.S. Dist. LEXIS 83148, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008). The term "creditor" under TILA refers to a person . . . "to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness"). <u>See</u> 12 U.S.C. § 2602

In the instant case, Plaintiff's Third Amended Complaint contained no plausible factual allegations that would tend to show that these specific Defendants are creditors under TILA. Indeed, this seems improbable, considering Wells Fargo, MERS and US Bank did not

provide Plaintiff with the loan that was secured by the Deed of Trust. As such, Plaintiff's TILA claims are dismissed.

### 4. HOEPA

As Defendants point out, "[n]ot every loan is subject to HOEPA[,]" and the requirements of 15 U.S.C. § 1602(aa)(1). See Emery v. Wells Fargo Bank, N.A., 2006 U.S. Dist. LEXIS 6817, 2006 WL 410980, at *6 (D. Ariz. 2006) (granting summary judgment for defendant where the plaintiff failed to adequately allege that his loan was subject to HOEPA).

"The Home Ownership and Equity Protection Act of 1994, or HOEPA, augmented TILA with additional disclosure obligations and substantive requirements for particular high-cost mortgages." Marks v. Chicoine, 2007 U.S. Dist. LEXIS 8521, 2007 WL 1056779, at * 8 (N.D. Cal. 2007) (citing 15 U.S.C. § 1602(aa), 9 § 1639). "Lenders must make certain warnings and disclosures in conspicuous type size at least three business days prior to the consummation of a HOEPA transaction." Booker v. Wells Fargo Home Mortgage, Inc., 138 Fed. Appx. 728, 730 (6th Cir. 2005) (citing 15 U.S.C. § 1639(a)-(b)(1)). Further, even if a loan is of the type governed by HOEPA, it is not subject to the Act's disclosure requirements unless it also features either: (a) a sufficiently high annual percentage rate ("APR"); or (b) points and fees payable at or before closing exceeding the greater of eight percent of "the total loan amount" or $ 400.00. Id. (citing 15 U.S.C. §§ 1602(aa)(1), 1639 (a)(1)).

Defendants contend that HOEPA does not apply in Blau's case because there are no factual allegations that the Plaintiff's mortgage was a "high cost" loan that would be subject the Act. This Court agrees, and find that Plaintiff's HOEPA claims fail as a matter of law.

### 4. RESPA

The Real Estate Settlement Procedures Act , or RESPA, "prohibits the giving or receiving of fees for referral as part of a real estate settlement service but permits fees that are paid for facilities actually furnished or services actually performed in the making of a loan." Valasquez v. Mortgage Electronic Registration Systems, Inc., 2008 U.S. Dist. LEXIS 93502, 2008 WL 4938162, * 3 (N. D. Cal. 2008) (federal claims dismissed against MERS

arising from attempted foreclosure sale of real property) (citing Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1005-06 (9th Cir. 2002). "Section 2607(a) prohibits the receipt of referral fees or kickback payments for the completion of a loan transaction. Section 2607(b) provides that fees may be received only for 'services actually performed.'" Id.

Specifically, RESPA applies only to fees charged for "settlement services," see 12 U.S.C. § 2602(2), not finance charges or interest rates, and there are no allegations of "fee-splitting" of any fees charged for "settlement services." See 12 U.S.C. § 2602(2) (settlement services includes title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, and the handling of the processing, and closing of settlement.); see also Bloom v. Martin, 865 F.Supp. 1377, 1382 (N.D. Cal. 1994) (granting motion to dismiss RESPA claim, listing fees covered by RESPA and holding "demand" and "reconveyance fees" referenced in complaint were not covered by RESPA).

Because Plaintiff has not made any plausible factual allegations that Defendants received any fees charged for 'settlement services' concerning the completion of her loan, Blau's RESPA claim fails as a matter of law.

**5. FCRA**

The "primary purpose" of the Fair Credit Reporting Act, or FCRA, is "to protect consumers against inaccurate and incomplete credit reporting." Nelson v. Chase Manhattan Mortgage Corp., 82 F.3d 1057, 1060 (9th Cir. 2002).

However, under the FCRA, furnishers of credit information are not liable to consumers for the information they initially furnish to credit reporting agencies about them, regardless of its truth or accuracy. See 15 U.S.C. § 1681s-2(c) and (d); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002); Washington v. CSC Credit Services, Inc., 199 F.3d 263 (5th Cir. 2000); Aklagi v. Nations Credit Fin. Svcs. Corp., 196 F. Supp. 2d 1186 (D. Kan. 2002). Rather, furnishers can only be liable to consumers for violating the "reinvestigation" procedures set forth in 15 U.S.C. § 1681s-2(b). A furnisher's

obligation to conduct a reinvestigation is only triggered if the consumer submits a notice of dispute to the credit reporting agency as contemplated by 15 U.S.C. § 1681i. See Young v. Equifax, 294 F.3d 631 (5th Cir. 2002).

In the instant case, because Plaintiff has made no factual allegations that she ever submitted a Section 1681i notice to any credit reporting agency, Wells Fargo's FCRA duties were never triggered as a matter of law. See 15 U.S.C. § 1681s-2(b)(1) ("After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall…"). As such, Blau's FCRA claim similarly fails.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part Defendants' Motion to Dismiss. (Dkt.#82.)

**IT IS FURTHER ORDERED** dismissing Defendants US Bank, N.A. and Mortgage Electronic Registration Systems from this lawsuit with prejudice.

**IT IS FURTHER ORDERED** dismissing all claims against Defendant Wells Fargo, other than Plaintiff's claims for fraud.

**IT IS FURTHER ORDERED** directing the parties to meet and confer and submit a revised proposed Scheduling Order to the Court by close of business on October 23, 2009.

DATED this 28th day of September, 2009.

_____
Mary H. Murguia
United States District Judge